UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SANDRA LEE, Individually and as Parent and
Natural Guardian of V.G., et al.,

                      Plaintiffs,

             -against-

DAVID C. BANKS and NEW YORK CITY
DEPARTMENT OF EDUCATION,

                    Defendants.

Case No. 1:23-cv-05800 (JLR)

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

Plaintiffs, parents of children with brain injuries (the "Student-Plaintiffs"), bring this case pursuant to the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1400 *et seq.*, against the New York City Department of Education (the "DOE") and David C. Banks in his official capacity as DOE Chancellor (together with the DOE, "Defendants"). Plaintiffs seek an injunction requiring the DOE to fund the Student-Plaintiffs' tuition and related services at the International Academy of the Brain ("iBrain") and attorney's fees and costs. ECF No. 44 ("Am. Compl." or the "Amended Complaint"). Now before the Court is Defendants' motion to dismiss the Amended Complaint in part. ECF No. 52 ("Br."). For the following reasons, Defendants' partial motion to dismiss is GRANTED.

## BACKGROUND

### I.    Statutory Framework

Under the IDEA, states receiving federal special education funding are required to provide a free appropriate public education ("FAPE") to children with disabilities. 20 U.S.C. § 1400(d)(1)(A); *see T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 151 (2d Cir. 2014). To provide a FAPE to each student with a disability, a school district must develop an individualized education program ("IEP") that is "reasonably calculated to enable

the child to receive educational benefits." *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959

F.3d 519, 525 (2d Cir. 2020) (quoting *T.M.*, 752 F.3d at 151).

"The IDEA also requires states to provide an administrative procedure for parents to

challenge the adequacy of their children's IEPs." *Mendez v. Banks*, 65 F.4th 56, 59 (2d Cir.

2023) (citing 20 U.S.C. § 1415(b)(6)).  New York has implemented a two-tier system of

administrative review.  N.Y. Educ. Law § 4404; *see Ventura de Paulino*, 959 F.3d at 526.  In

the first tier, a parent can file an administrative due process complaint ("DPC") challenging

the IEP and requesting a hearing before an impartial hearing officer ("IHO").  *Ventura de*

*Paulino*, 959 F.3d at 526.  In the second tier, parties aggrieved by the IHO's decision can

appeal the case to a state review officer ("SRO").  *Id.*; *see R.E. v. N.Y.C. Dep't of Educ.*, 694

F.3d 167, 175 (2d Cir. 2012).  "Once the state review officer makes a final decision, the

aggrieved party may seek judicial review of that decision in a state or federal trial court."

*Ventura de Paulino*, 959 F.3d at 526.

Section 1415(j) of the IDEA, also known as the "stay-put" or "pendency" provision,

provides that "while the administrative and judicial proceedings are pending and unless the

school district and the parents agree otherwise, a child must remain, at public expense, in his

or her then-current educational placement."  *Id.* (quotation marks and citation omitted).  "The

purpose of this provision is 'to maintain the [child's] educational status quo while the parties'

dispute is being resolved.'"  *Abrams v. Porter*, No. 20-3899, 2021 WL 5829762, at *1 (2d Cir.

Dec. 9, 2021) (summary order) (quoting *T.M.*, 752 F.3d at 152).  "[A] school district is

required 'to continue funding whatever educational placement was last agreed upon for the

child until the relevant administrative and judicial proceedings are complete.'"  *Doe v. E.*

*Lyme Bd. of Educ.*, 962 F.3d 649, 659 (2d Cir. 2020) (quoting *T.M.*, 752 F.3d at 171).

The stay-put provision, however, "does not guarantee a disabled child the right to remain in the exact same school with the exact same service providers while his administrative and judicial proceedings are pending.  Instead, it guarantees only the same general level and type of services that the disabled child was receiving." *T.M.*, 752 F.3d at 171.  Although parents "dissatisfied with their child's education can unilaterally change their child's placement during the pendency of review proceedings," *Ventura de Paulino*, 959 F.3d at 526 (quotation marks and citation omitted), they cannot unilaterally require the school district to pay for that new school, *see id.* at 533 (DOE was not obligated to fund students' placements where parents unilaterally enrolled students in new school without the DOE's approval).  Unless the parents can "persuade the school district to pay for the program's new services on a pendency basis," their only recourse is to "enroll the child in a new school, and then seek retroactive reimbursement from the school district after the IEP dispute is resolved." *Id.* at 534.

"Although the IDEA's stay-put provision generally does not require the state to pay the costs of a *new* educational placement during the pendency of proceedings, parents can obtain funding for a new placement if an IHO or SRO finds it to be appropriate and issues a pendency order, and the school district does not appeal the decision." *Mendez*, 65 F.4th at 59. For children with a pendency order, "the IDEA's stay-put provision does not create an entitlement to immediate payment or reimbursement," but "[p]arents or guardians may still be able to obtain such relief if they establish that a delay or failure to pay has jeopardized their child's educational placement." *Id.* at 63.

## II.    Factual Background[1]

Plaintiffs are Sandra Lee, individually and as the parent and natural guardian of V.G., Am. Compl. ¶¶ 31-43, Yvonne Davis, as the legal guardian of O.C., *id.* ¶¶ 44-58, Oliver Bruckauf, as the parent and natural guardian of E.B., *id.* ¶¶ 59-73, Svetlana Khanimova, as the parent and natural guardian of D.N., *id.* ¶¶ 74-88, and Maylene Otero, as the parent and natural guardian of K.R., *id.* ¶¶ 89-104.  "Each of the Student-Plaintiffs here suffers from a brain injury that adversely affects their educational abilities and performance."  *Id.* ¶ 5.  Each of the Plaintiffs brought a DPC against the DOE, alleging that the DOE did not offer their child a FAPE for the 2023-2024 school year.  *Id.* ¶¶ 6, 12-13.  Each of the Student-Plaintiffs currently attends iBrain and has a decision or order from an IHO or SRO establishing iBrain as their pendency placement for the 2023-2024 school year.  *Id.* ¶¶ 13, 125.

## III.    Procedural History

Plaintiffs brought this action on July 6, 2023.  ECF No. 1.  On July 11, 2023, Plaintiffs filed an emergency motion, seeking an order declaring iBrain as each Student-Plaintiff's pendency placement for the 2023-2024 extended school year and directing the DOE to fund each Student-Plaintiff's tuition and related services.  *See* ECF No. 9 at 18-19.  The Court held a conference on Plaintiffs' motion on July 19, 2023, ECF No. 14, after which Defendants filed a motion to dismiss the complaint, ECF No. 19.  Plaintiffs then requested leave to file an amended complaint.  ECF No. 33.  The Court ordered the parties to appear for another conference on November 22, 2023 to discuss the pending motions.  ECF No. 40.

---

[1] Unless otherwise noted, the facts stated herein are taken from the Amended Complaint and accepted as true for the purposes of resolving Defendants' motion to dismiss.  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010).

During the November 22, 2023 conference, the Court denied Plaintiffs' emergency motion for declaratory and injunctive relief, granted Defendants' motion to dismiss the complaint, and granted Plaintiffs' request to amend the complaint. ECF No. 43. On November 29, 2023, Plaintiffs filed the Amended Complaint. Am. Compl. Defendants filed the instant motion to dismiss the Amended Complaint on December 20, 2023. Br. Plaintiffs opposed the motion on January 4, 2024. ECF No. 53 ("Opp."). Defendants replied in support of their motion on January 11, 2024. ECF No. 56 ("Reply"). The parties have provided updates to the Court since the filing of the motion that bear upon the dismissal motion as they relate to the status of various payments. ECF Nos. 58 ("March 9, 2024 Letter"), 60 ("March 18, 2024 Letter"), 62, 67, 68, 69, 70. For example, according to a letter filed by Plaintiffs on April 15, 2024, the DOE has paid all outstanding obligations with respect to each Student-Plaintiff's tuition. *See* ECF No. 69. The Court held a conference on the motion on April 16, 2024. ECF No. 64.

## LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The federal courts are courts of limited jurisdiction, their powers circumscribed at their most basic level by the terms of Article III of the Constitution, which states that they may hear only 'Cases' or 'Controversies.'" *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet*, 260 F.3d 114, 118 (2d Cir. 2001). "[A]t all times, the dispute before the court must be real and live, not feigned, academic, or conjectural." *Id.* If a live controversy no longer exists, the case becomes moot and a district court no longer "has subject-matter jurisdiction because any ruling or judgment issued without [a live controversy] would be

5

hypothetical in nature." *F.O. v. N.Y.C. Dep't of Educ.*, 899 F. Supp. 2d 251, 254 (S.D.N.Y. 2012).

"In reviewing a motion to dismiss under Rule 12(b)(1), the court 'must accept as true all material factual allegations in the complaint, but is not to draw inferences from the complaint favorable to plaintiffs.'" *Cruz v. N.Y.C. Dep't of Educ.*, No. 19-cv-00856 (PGG), 2020 WL 1322511, at *6 (S.D.N.Y. Mar. 20, 2020) (brackets omitted) (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citing *Makarova*, 201 F.3d at 113), *aff'd*, 561 U.S. 247 (2010). "Where, as here, the defendant moves for dismissal under Rule 12(b)(1) as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Cruz*, 2020 WL 1322511, at *6 (ellipsis omitted) (quoting *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). With respect to a motion to dismiss under Rule 12(b)(6), the Court draws all reasonable inferences in the plaintiff's favor and accepts as true all non-conclusory allegations of fact. *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (en banc); *see Iqbal*, 556 U.S. at 678. A complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are 'merely consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "[T]he

court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of

the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75

(2d Cir. 2020).  Determining whether a complaint states a claim is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*,

556 U.S. at 679.

## DISCUSSION

Plaintiffs assert one cause of action in the Amended Complaint for "injunctive and

declaratory relief to ensure that [the Student-Plaintiffs] remain in their uncontested pendency

placements/programs and that their uncontested pendency orders/agreements are

implemented."  Am. Compl. ¶ 199.  Plaintiffs pray for "an injunctive order requiring [the]

DOE to fund each Student-Plaintiff's tuition and related services, including special

transportation and nursing services, where applicable forthwith, as each Student-Plaintiff is

entitled to an automatic preliminary injunction for pendency as a matter of law, as each

Student-Plaintiff's pendency placement/program is in jeopardy because of the Defendants[']

failure to fund the same, including any associated late fees."  Am. Compl. at 24.

Defendants move to dismiss the Amended Complaint in part, namely, "Plaintiffs'

claims with respect to tuition funding."  Br. at 1.  Defendants argue that "Plaintiffs' request

for tuition funding is moot as to the first half of the school year" and is a "premature attempt

to jump the line for implementation" "[a]s to the second half of the school year."  *Id.*[2]

---

[2] Plaintiffs asserted a second cause of action in the Amended Complaint, pursuant to 42
U.S.C. § 1983 ("Section 1983").  Am. Compl. ¶ 203.  However, Plaintiffs subsequently
"withdr[ew] their § 1983 claims."  Opp. at 10.  Accordingly, Plaintiffs' Section 1983 claims
are dismissed.

### A. Moot Claims

"Under the doctrine of mootness, the plaintiff's 'personal stake' in the outcome of the litigation 'must be extant at all stages of review, not merely at the time the complaint is filed.'" *Stagg, P.C. v. U.S. Dep't of State*, 983 F.3d 589, 601 (2d Cir. 2020) (quoting *United States v. Sanchez-Gomez*, 584 U.S. 381, 385 (2018)). "When the plaintiff no longer has a legally cognizable interest in the outcome of the action, the case becomes moot and is no longer a 'case' or 'controversy' for the purposes of Article III." *Id.* "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983).

#### 1. Tuition Funding

As confirmed in their April 15, 2024 letter, Plaintiffs agree that the DOE has paid iBrain tuition for each Student-Plaintiff. *See* ECF No. 69. Thus, all claims for tuition funding as of April 15, 2024 are dismissed as moot. Plaintiffs also concede that the DOE has "pa[id] the total costs of tuition for the 2023-2024 school year" for Student-Plaintiff D.N. Opp. at 7. Thus, the claim for tuition funding as to D.N., even for later in the 2023-2024 school year, is dismissed as moot.

#### 2. Transportation and Nursing Services

Based on the parties' representations, several other aspects of Plaintiffs' claims are moot. First, the DOE has fully paid for transportation services for V.G., O.C., E.B., and K.R. ECF No. 69. Second, the DOE has paid nursing services for E.B. and O.C. *Id.* These claims for transportation and nursing services that have already been paid are dismissed as moot.

#### 3. Outstanding Costs

As of the parties' most recent letters in this case, there are only a handful of unpaid, outstanding costs sought by Plaintiffs.

First, D.N.'s outstanding balance for transportation services has not been paid. *Id.*

Defendants explain that the "DOE has . . . not received any response to its November 10, 2023

email requesting documentation for transportation services" with respect to D.N.  Br. at 6 n.2;

*see also* March 18, 2024 Letter at 2; ECF No. 70 at 2.  Plaintiffs have not addressed this

request for documentation, but noted during the April 16, 2024 conference that they may only

seek a portion of these costs.  Although Defendants have not moved to dismiss this claim, the

Court notes that Plaintiffs' continued failure to substantiate the costs for the transportation

services provided may be detrimental to their claim.  *See, e.g.*, *Davis v. Banks*, No. 22-cv-

08184 (JMF), 2023 WL 5917659, at *4 (S.D.N.Y. Sept. 11, 2023) (granting summary

judgment to DOE where pendency orders provided for reimbursement only for transportation

services "actually provided").

The only other outstanding payments sought by Plaintiffs are for nursing services for

D.N. and K.R.  *See* March 18, 2024 Letter at 1; *see also* ECF No. 69.  The Court requested

additional briefing as to these costs, ECF No. 65, which the parties provided, *see* ECF

Nos. 67-68.  Plaintiffs note that the operative pendency orders for D.N. and K.R. do not cover

nursing services.  March 9, 2024 Letter at 2 nn.2-3; ECF No. 68 at 1 ("In the context of D.N.

and K.R., . . . nursing services were not part of their" IEPs).  These claims are therefore not

properly before the Court; until a pendency determination is issued to confirm a student's

placement, the DOE is not obligated to fund that student's tuition or related services.  *See*

*Mendez*, 65 F.4th at 61; *Ventura de Paulino*, 959 F.3d at 532 (DOE assumed responsibility to

pay for students' pendency placement when it chose not to appeal IHO ruling to an SRO).

The Court therefore dismisses Plaintiffs' request for nursing fees for D.N. and K.R.

**B. Unripe Claims**

The Court next moves to Defendants' motion to dismiss claims for future payments as unripe and premature. "Ripeness is a constitutional prerequisite to exercise of jurisdiction by federal courts." *Nutritional Health All. v. Shalala*, 144 F.3d 220, 225 (2d Cir. 1998). For a cause of action to be ripe, and therefore justiciable, "it must present a real, substantial controversy, not a mere hypothetical question. A claim is not ripe if it depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (quotation marks and citation omitted). "The doctrine's major purpose is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Id.* (quotation marks and citation omitted).

As to any future payments, Plaintiffs' claims are unripe. The parties agree the Student-Plaintiffs' pendency placements for the 2023-2024 school year are at iBrain. Am. Compl. ¶ 13; *see* Br. at 3. Thus, as to future payments, which are not yet outstanding obligations, "Plaintiffs effectively ask the Court to fast-track payments already in the works." *Zimmerman v. Banks*, No. 23-cv-05192 (LDH), 2024 WL 1282660, at *2 (E.D.N.Y. Mar. 26, 2024). "Nothing in the text" of the IDEA's stay-put provision "requires the DOE to automatically *fast-track* funding for the educational placements." *Mendez*, 65 F.4th at 63.

Although the IDEA's stay-put provision may create an entitlement to immediate payment if a parent or guardian "establish[es] that a delay or failure to pay has jeopardized their child's educational placement," *id.*, Plaintiffs have not adequately alleged that the Student-Plaintiffs' educational placements are in jeopardy. Plaintiffs conclusorily alleged that "Defendants have failed to fund the pendency placements/programs in a timely manner, the pendency placements prospectively, and the pendency placements/programs wholly and

10

completely, jeopardizing the Student-Plaintiffs' placements/programs." Am. Compl. ¶ 20.

But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice" to adequately allege a cause of action. *Iqbal*, 556 U.S. at 678.

In sum, Plaintiffs have not pleaded specific facts indicating that the Student-Plaintiffs'

educational placements are jeopardized by a delay in payment by the DOE. Indeed, Plaintiffs

admit that the DOE has paid all outstanding tuition obligations for each of the Student-

Plaintiffs. ECF No. 58 at 2. Thus, Plaintiffs' claims for future funding are dismissed as

unripe.

## C. Late Fees

Defendants also argue that with respect to Plaintiffs' potential entitlement to recoup

funds to cover late fees relating to tuition payments, Plaintiffs "have not alleged that any of

the pendency orders or agreements upon which their pendency funding entitlement rests

require the funding of such ancillary fees." Br. at 3. Additionally, Defendants argue that

"Plaintiffs likewise fail to allege that their entitlement to any incurred late fees was raised in

their due process complaints, potentially depriving the Court of subject matter jurisdiction to

even consider these demands." *Id.* Plaintiffs did not address these arguments in their

opposition brief. *See generally* Opp. The Court will therefore consider those claims

abandoned. *See Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 704 n.19

(S.D.N.Y. 2011) (noting that the plaintiff abandoned his claims where they "do not appear

anywhere in his opposition despite defendants' arguments" against them); *Marom v. Town of

Greenburgh*, No. 20-cv-03486 (PMH), 2022 WL 17584279, at *7 (S.D.N.Y. Dec. 12, 2022)

(finding claim abandoned where the plaintiff declined to respond to the defendants' arguments

on that claim); *Murillo-Roman v. Pension Boards – United Church of Christ*, No. 22-cv-

08365 (JLR) 2024 WL 246018, at *13 n.8 (S.D.N.Y. Jan. 23, 2024) (finding claims

abandoned where "Plaintiff declined to respond to Defendants' arguments against her [as to certain of her asserted] claims" at the motion-to-dismiss stage).

**CONCLUSION**

For the foregoing reasons, Defendants' partial motion to dismiss is GRANTED. The only remaining claims in this action are those asserted by D.N. with respect to transportation services. The Clerk of Court is respectfully directed to CLOSE the motion pending at ECF No. 50, and to terminate all Plaintiffs except for Svetlana Khanimova, individually and as Parent and Natural Guardian of D.N. The parties are hereby ORDERED to jointly file a letter within two weeks of the date of this Opinion and Order stating whether discovery is required before the case proceeds to summary judgment or trial. If notified that the parties intend to proceed with summary judgment motions, the Court will thereafter set a briefing schedule.

Dated: April 17, 2024
       New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge